No. 20-1900

CAPITAL HABEAS CASE

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

———————————————

CHADRICK FULKS,
Petitioner–Appellant,

v.

T.J. WATSON, Warden,
Respondent–Appellee.

———————————————

On Appeal from the United States District Court for the
Southern District of Indiana, No. 2:15-CV-33 (Hon. James R. Sweeney, II)

———————————————

**APPELLEE'S RESPONSE TO PETITION FOR REHEARING**

———————————————

| | |
|---|---|
| JOHN C. CHILDRESS<br>Acting United States Attorney<br>Southern District of Indiana | KENNETH A. POLITE, JR.<br>Assistant Attorney General |
| | DANIEL S. KAHN<br>Acting Deputy Assistant Attorney<br>General |
| ROBERT FRANK DALEY, JR.<br>KATHLEEN MICHELLE STOUGHTON<br>Assistant United States Attorneys<br>District of South Carolina | WILLIAM A. GLASER<br>Attorney, Appellate Section<br>Criminal Division<br>U.S. Department of Justice<br>950 Pennsylvania Ave, NW, Ste. 1264<br>Washington, DC 20530<br>(202) 532-4495<br>William.Glaser@usdoj.gov |

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................i

TABLE OF AUTHORITIES ............................................................................ii

GLOSSARY .................................................................................................iv

INTRODUCTION ......................................................................................... 1

BACKGROUND ........................................................................................... 1

ARGUMENT ................................................................................................ 4

    A.    The panel's decision is consistent with *Webster v. Daniels* and this Court's saving-clause precedent. ................................................5

    B.    The panel decision is consistent with Supreme Court precedent. ...9

    C.    *Bourgeois* effectively foreclosed Fulks's claims, and the denial of rehearing in *Bourgeois* supports denial of rehearing here. ............ 12

CONCLUSION.............................................................................................. 15

CERTIFICATE OF COMPLIANCE ........................................................... 16

CERTIFICATE OF SERVICE ................................................................... 17

# TABLE OF AUTHORITIES

## Cases

*Atkins v. Virginia*,
536 U.S. 304 (2002) ....................................................................... 1, 9

*Bourgeois v. Warden*,
2:19-CV-392, Doc. 1 (S.D. Ind. Aug. 15, 2019) ........................................ 13

*Bourgeois v. Watson*,
977 F.3d 620 (7th Cir.), *cert. denied*, 141 S. Ct. 507 (2020) .................. passim

*Bourgeois v. Watson*,
980 F.3d 1190 (7th Cir. 2020) (denying rehearing en banc) ................... 1, 15

*Fulks v. Watson*,
4 F.4th 586 (7th Cir. 2021) .............................................................. passim

*Hall v. Florida*,
572 U.S. 701 (2014) ..............................................................................2

*Madison v. Alabama*,
139 S. Ct. 718 (2019) ...........................................................................2

*Moore v. Texas*,
137 S. Ct. 1039 (2017)...........................................................................2

*Purkey v. United States*,
964 F.3d 603 (7th Cir.), *cert. denied*, 141 S. Ct. 196 (2020) .............. 3, 7, 8, 14

*United States v. Bourgeois*,
No. 02-CR-216, 2011 WL 1930684 (S.D. Tex. May 19, 2011) .................. 13

*United States v. Fulks*,
454 F.3d 410 (4th Cir. 2006), *cert. denied*, 551 U.S. 1147 (2007)...................2

*United States v. Fulks*,
683 F.3d 512 (4th Cir. 2012), *cert. denied*, 571 U.S. 941 (2013)....................2

*United States v. Roane*,
    378 F.3d 382 (4th Cir. 2004) .............................................................. 4, 12

*Webster v. Daniels*,
    784 F.3d 1123 (7th Cir. 2015) (en banc) ............................................5, 6, 7, 8

## Statutes & Rules

28 U.S.C. § 2241 ..............................................................................................2

28 U.S.C. § 2255 ........................................................................................1, 2, 3

Fed. R. App. P. 35 ...........................................................................................1

Fed. R. App. P. 40 ...........................................................................................1

# GLOSSARY

AAIDD     American Association on Intellectual and Developmental Disabilities

DSM-4     American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders,* Fourth Edition, Text Revision (2000)

DSM-5     American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders,* Fifth Edition (2013)

## INTRODUCTION

The panel correctly held that Petitioner-Appellant Chadrick Fulks's

remedy under 28 U.S.C. § 2255 was not "inadequate or ineffective" to test the

legality of his sentence, as required to satisfy the saving clause in § 2255(e).

The panel's decision was consistent with the decisions of this Court and the

Supreme Court and therefore does not warrant panel or en banc rehearing.  *See*

Fed. R. App. P. 35(b)(1)(A), 40(a)(2).  Indeed, the panel relied "in large

measure" on *Bourgeois v. Watson*, 977 F.3d 620 (7th Cir. 2020), a case in which

this Court denied rehearing en banc, 980 F.3d 1190 (7th Cir.), *cert. denied*, 141

S. Ct. 507 (2020).  This Court should likewise deny rehearing here.

## BACKGROUND

In 2004, Fulks pleaded guilty in the District of South Carolina to eight

federal charges arisings from the carjacking, kidnapping, and death of Alice

Donovan.  *Fulks v. Watson*, 4 F.4th 586, 587 (7th Cir. 2021).  On the jury's

recommendation, the district court imposed death sentences on two counts.

*Id.* at 588.  Although Fulks's penalty-phase defense focused on his "borderline

intelligence with IQ scores ranging from 75 to 79," *id.*, he did not claim that he

suffered from an intellectual disability that would prevent imposition of the

death penalty under *Atkins v. Virginia*, 536 U.S. 304 (2002).  The Fourth Circuit

1

affirmed his death sentence, and the Supreme Court denied review. *United States v. Fulks*, 454 F.3d 410 (4th Cir. 2006), *cert. denied*, 551 U.S. 1147 (2007).

In 2008, Fulks moved in the District of South Carolina to vacate his death sentences under 28 U.S.C. § 2255. 4 F.4th at 588. His 33 claims for relief did not include an *Atkins* claim. *Id.* The district court denied § 2255 relief, the Fourth Circuit affirmed, and the Supreme Court denied review. *United States v. Fulks*, 683 F.3d 512 (4th Cir. 2012), *cert. denied*, 571 U.S. 941 (2013).

In 2015, Fulks filed a habeas petition under 28 U.S.C. § 2241 in the Southern District of Indiana, where he is imprisoned. 4 F.4th at 588. Fulks filed an amended petition in 2019 that raised an *Atkins* claim for the first time. *Id.* Fulks attached to his petition a report from a neuropsychologist who diagnosed him as intellectually disabled in 2018. *Id.* Fulks asserted that § 2255 was "inadequate or ineffective to test the legality of his detention," § 2255(e), because his claims "rested on new legal and factual bases unavailable to him at the time of his sentencing and § 2255 petition." 4 F.4th at 588. Specifically, "Fulks relied on the Supreme Court's decisions in *Hall v. Florida*, 572 U.S. 701 (2014), *Moore v. Texas* (*Moore I*), 137 S. Ct. 1039 (2017), and *Madison* [*v. Alabama*], 139 S. Ct. 718 (2019)" and on the "2012 and 2013 updates" to manuals used to diagnose intellectual disability. 4 F.4th at 588-89. The

2

district court held that § 2255(e)'s saving clause foreclosed Fulks's habeas petition. *Id.* at 589.

A panel of this Court affirmed. The panel first explained that the words "inadequate or ineffective" in § 2255(e) "mean something more than unsuccessful." 4 F.4th at 590 (quoting *Purkey v. United States*, 964 F.3d 603, 615 (7th Cir.), *cert. denied*, 141 S. Ct. 196 (2020)). Instead, "there must be a compelling showing that, as a practical matter, it would be *impossible* to use section 2255 to cure a fundamental problem." *Id.* (quoting *Purkey*, 964 F.3d at 615).

The panel held that the "[u]pdates to the legal and diagnostic standards which may now provide Fulks a stronger basis to prove an intellectual disability, do not expose any structural defect in § 2255." 4 F.4th at 592. The panel determined that "*Hall*, *Moore I*, and *Moore II* did not alter the law of intellectual disability to such a great extent" that a § 2255 motion was "inadequate or ineffective to test the legality of Fulks's death sentence" in 2008. *Id.* Those cases, the panel explained, simply "represent course corrections to state-court application of *Atkins*." *Id.*

The panel similarly determined that "[u]pdates to the clinical diagnostic standards for intellectual disability" did not demonstrate that § 2255 was inadequate or ineffective. 4 F.4th at 592. The panel acknowledged that "Fulks

may have a marginally stronger case of proving intellectual disability under today's standards." *Id.* But, the panel explained, these updates did not demonstrate that it was "impossible for Fulks to pursue an *Atkins* claim in his initial postconviction motion." *Id.* at 593.

The panel also rejected Fulks's contention that his claim was "foreclosed by Fourth Circuit precedent" at the time of his § 2255 motion, pointing out that the Fourth Circuit had shown "amenability" to the argument that a person could be intellectually disabled with an IQ of 75 or below. 4 F.4th at 593 (citing *United States v. Roane*, 378 F.3d 382 (4th Cir. 2004)). Because no case law "on the books at the time of Fulks's § 2255 petition . . . would have foreclosed him from raising an arguable *Atkins* claim," the panel concluded that § 2255 was not "inadequate or ineffective to challenge his capital sentence" and Fulks therefore "cannot use § 2241 to claim for the first time that he is ineligible for the death penalty under *Atkins*." *Id.*

## ARGUMENT

The panel correctly determined that recent legal and diagnostic developments related to intellectual disability do not reveal any structural defect in § 2255 that would allow Fulks to satisfy the saving clause. The panel's decision is consistent with this Court's precedent and all but dictated by the Court's recent decision in *Bourgeois*. Further review is unwarranted.

4

**A.    The panel's decision is consistent with *Webster v. Daniels* and this Court's saving-clause precedent.**

Fulks incorrectly contends that the panel decision conflicts with *Webster v. Daniels*, 784 F.3d 1123 (7th Cir. 2015) (en banc).  The defendant in *Webster* obtained new evidence relating to his intellectual-disability claim after his initial § 2255 motion was denied.  *Id.* at 1132-34.  The en banc Court identified a structural problem in § 2255: Congress could not have "contemplated" the possibility of constitutional ineligibility for the death penalty when it adopted § 2255 (h), which allows successive § 2255 motions based only on (a) newly discovered evidence related to *guilt* and (b) new rules of constitutional law.  *Id.* at 1138.  *Webster* held that a defendant may use § 2241 to raise a claim of "categorical ineligibility" for the death penalty based on "newly discovered evidence" that "existed before the time of the trial" and was unavailable "despite diligence on the part of the defense."  *Id.* at 1140 (emphasis omitted).

Fulks argues that the panel decision "violated" or "contradicted" (Pet. 7, 11) *Webster*'s "due diligence" standard by concluding that it was not "impossible for Fulks to pursue an *Atkins* claim" in his § 2255 motion.  Pet. 7 (quoting 4 F.4th at 593).  Fulks argues that his counsel could not have raised an *Atkins* claim where "counsel consulted *six* experts who concluded that Mr.

5

Fulks was not intellectually disabled under then-prevailing standards." *Id.*; *see id.* at 17 (arguing that an *Atkins* claim would have had "no factual basis").

The panel's decision does not conflict with *Webster*, which recognized an exception to the saving clause only for newly discovered evidence that "*predate*[s] the trial." *Webster*, 784 F.3d at 1140. *Webster* made clear that the "evidence cannot be newly created." *Id.* at 1141. Yet the factual developments that Fulks relies on arose well after his trial and § 2255 motion. Because this essential requirement under *Webster* was not met, the panel had no need to consider whether Fulks's counsel was diligent. Indeed, such an inquiry would have made little sense; it will *always* be impossible for diligent counsel to discover evidence that does not yet exist.

Instead, the panel correctly considered whether Fulks's *Atkins* claim satisfied the saving clause through some other avenue. *See* 4 F.4th at 590 ("reiterat[ing]" that *Webster* and other cases "do not create rigid categories delineating when the savings clause is available" (quotation and brackets omitted)). In so doing, the panel followed *Webster*'s teaching that a petitioner must identify "some kind of structural problem with section 2255 before section 2241 becomes available." *Id.* (quoting *Webster*, 784 F.3d at 1136). And the panel's fact-specific determination that the "[u]pdates to the legal and

6

diagnostic standards . . . do not expose any structural defect in § 2255," *id.* at 592, does not conflict with *Webster*, which did not consider that question.

Fulks also argues that the panel decision conflicts with *Purkey* (and *Webster*) because it "elevated the *practical* impossibility test from *Purkey* into a *literal* impossibility test that punishes the prisoner for failing to assert a claim in his initial § 2255 proceedings that had no factual basis at that time." Pet. 7; *see id.* at 13, 17. He argues that the panel should not have asked "whether it was *possible* for Mr. Fulks to present a claim of intellectual disability," but simply "whether prior counsel were diligent." *Id.* at 16. Asking whether it was "impossible" to raise such a claim, Fulks contends, means that "no defendant could ever reach this threshold." *Id.* at 18.

Fulks misunderstands the relevant inquiry. The question is not whether the *facts* made it impossible to raise a claim on § 2255, but whether a "structural problem with section 2255" made it impossible. *Webster*, 784 F.3d at 1136. As *Purkey* explained, a defendant must make "a compelling showing that, as a practical matter, it would be impossible to use section 2255 to cure a fundamental problem. It is not enough that proper use of the statute results in denial of relief." *Purkey*, 964 F.3d at 615. In *Webster*, the structural problem in § 2255 was Congress's inability to "contemplate[ ]" constitutional ineligibility for the death penalty when it adopted § 2255(h). *Id.* at 1138. But here, as in

7

*Purkey*, nothing in § 2255 "formally prevented" Fulks from raising an *Atkins* claim in his § 2255. *Purkey*, 964 F.3d at 615. Instead, he simply lacked a factual basis for an *Atkins* claim.

Fulks argues that the "fundamental problem with § 2255" is that it fails to allow *Atkins* claims based on "developments that occurred after the[ ]initial § 2255 proceedings that do not satisfy § 2255(h)." Pet. 10. But *Webster* rejected such a broad rule, holding that a defendant cannot resort to § 2241 based on "all newly discovered evidence" relating to the constitutionality of a death sentence. *Webster*, 784 F.3d at 1140. *Webster* observed that "it would always be possible to conduct more I.Q. and adaptive functioning tests in the prison." *Id*. But such tests cannot provide the basis for a § 2241 petition "or else there would never be any finality to capital cases involving . . . the intellectually disabled." *Id. Bourgeois* similarly explained that the saving clause cannot apply "every time the Supreme Court clarifies the law that governed a prisoner's § 2255 motion" or "every time the medical community updates its diagnostic standards." *Bourgeois*, 977 F.3d at 636. "Were that the case, we would truly be facing 'a never-ending series of reviews and re-reviews.'" *Id.* (quoting *Purkey*, 964 F.3d at 615). The panel therefore correctly rejected Fulks's proposed rule.

8

**B.     The panel decision is consistent with Supreme Court precedent.**

Fulks also errs in contending that the panel decision "conflicts with decisions of the United States Supreme Court"—specifically *Atkins* and *Moore I*. Pet. 1. Fulks first contends that the panel decision conflicts with *Atkins* (and violates the Eighth Amendment) because "*Atkins* imposes a 'substantive restriction' on the government's power to 'take the life' of an intellectually disabled defendant." Pet. 4 (quoting *Atkins*, 536 U.S. at 321); *see id.* at 10, 17-18. He argues that § 2255's "procedural requirements for a successive motion . . . cannot preclude review for claims involving a categorical exemption" from the death penalty. Pet. 10.

As the panel observed, "[n]othing in the Supreme Court's jurisprudence . . . suggests that a capital prisoner seeking to raise an *Atkins* claim is exempt from the procedural limitations in § 2255." 4 F.4th at 592. Indeed, *Bourgeois* confirmed that § 2255(e) and (h)'s limitations are enforceable in the context of *Atkins* claims, explaining that "[a] federal prisoner is entitled to one reasonable opportunity to obtain judicial correction of a fundamental defect in his conviction or sentence." *Bourgeois*, 977 F.3d at 638 (ellipses and quotation omitted). Because Fulks provides no support for his claim that *Atkins* claims are exempt from the "procedural requirements for a successive motion," Pet. 10, this claim cannot justify en banc review.

9

Fulks also argues that the panel decision conflicts with *Moore I*'s holding that "*current* diagnostic standards are binding in *Atkins* proceedings." Pet. 4. In fact, the panel recognized that "[t]he proper *Atkins* inquiry . . . must follow the medical community's *current* diagnostic standards." 4 F.4th at 591 (emphasis in original). But the panel did not address whether Fulks is intellectually disabled—either under current standards or those that existed in 2008. Instead, it considered the separate question of whether the "[u]pdates to the clinical diagnostic standards" demonstrated that "the remedy available to Fulks in his original § 2255 motion was inadequate or ineffective." *Id.* at 592. That was the relevant question under this Court's precedent. *See Bourgeois*, 977 F.3d at 639. Although Fulks disagrees with how the panel answered that question, he cannot show that its decision conflicted with *Moore I*, which did not address § 2255(e)'s saving clause.

Moreover, the panel correctly concluded that these updates did not demonstrate that § 2255 was inadequate or ineffective. In challenging that conclusion, Fulks misconstrues the record in this case, including the extent and nature of the updates to the clinical diagnostic standards.

First, Fulks asserts that, "[w]ith the issuance of the DSM-5, the diagnostic community unanimously mandated correcting for the Flynn Effect." Pet. 15. In fact, the DSM-5 does not "mandate[ ]" Flynn correction,

10

but merely says that the Flynn Effect "may affect test scores." App.497. And Fulks could have invoked the Flynn Effect in his § 2255 motion based on the 2007 AAIDD *User's Guide*, which said that a clinician "needs to . . . take into consideration the Flynn Effect," Supp.App.46-47, stronger language than the newer *User's Guide*, which simply "recommend[s]" Flynn correction, App. 524.

Second, Fulks asserts that "[t]he DSM-5 and AAIDD-2012 also rejected the use of hard IQ cutoffs." Pet. 16. But the DSM-4 (issued before Fulks's trial) had already rejected a hard IQ cutoff, explaining that because of the "measurement error" in IQ tests, it is "possible to diagnose Mental Retardation in individuals with IQs between 70 and 75 who exhibit significant deficits in adaptive behavior." Supp.App.19-20; *compare* App.497 (DSM-5) (stating that, accounting for the "margin of measurement error," those with intellectual disabilities have an IQ "score of 65-75" or lower).

Third, Fulks asserts that his IQ scores were "the only element of the diagnosis that precluded him from being diagnosed as intellectually disabled before." Pet. 3; *see id.* at 15 ("[H]is counsel knew that the second and third prongs of intellectual disability were present . . . ."). But he cites no record evidence for this claim, and the excerpts included in the appellate record do not contain any expert opinion from before 2008 indicating that Fulks's

11

adaptive functioning fell below the threshold for intellectual disability or that onset occurred before age 18. *See* Supp.App.1-15; 2nd.Supp.App.544-580.

Finally, Fulks takes issue (Pet. 7, 20-23) with the panel's statement that *Roane* showed the Fourth Circuit's "amenability" in 2008 to the argument that someone with an IQ score of 75 or below could be "intellectually disabled." 4 F.4th at 593. He argues that *Roane* instead *supports* his argument that an *Atkins* claim would have been futile because *Roane* rejected an *Atkins* claim based on the findings of a psychologist "who did not make a Flynn-correction." Pet. 21. But *Roane* did not suggest that a defendant could never rely on the Flynn Effect to make out an *Atkins* claim. It simply rejected a particular defendant's reliance on the Flynn Effect where the psychologist who testified that the defendant was "just above the level of mental retardation" explained that he "double-checked his findings and consulted with colleagues" before reaching that conclusion. *Roane*, 378 F.3d at 408.

### C.    *Bourgeois* effectively foreclosed Fulks's claims, and the denial of rehearing in *Bourgeois* supports denial of rehearing here.

The panel's decision here was all but dictated by *Bourgeois*, which explained that "the savings clause does not apply every time the Supreme Court clarifies the law that governed a prisoner's § 2255 motion, or . . . every time the medical community updates its diagnostic standards." *Bourgeois*, 977

F.3d at 636. In both this case and *Bourgeois*, the defendant had an IQ within the range of intellectual disability. *See* 4 F.4th at 592 (Fulks had "Flynn-adjusted IQ scores of 75, 76, and 77"); *Bourgeois*, 977 F.3d at 635 (Bourgeois had IQ scores of 70 and 75). In each case, *Atkins* was "on the books" at the time of the defendant's § 2255 motion (and trial). *See* 4 F.4th at 587-88 (trial in 2004 and § 2255 motion filed in 2008); *United States v. Bourgeois*, No. 02-CR-216, 2011 WL 1930684 (S.D. Tex. May 19, 2011) (trial in 2004 and § 2255 motion filed in 2007). In each case, the defendant sought *Atkins*-based habeas relief in 2019, relying on *Moore I* and the updates to the DSM and the AAIDD manuals (Fulks also relied on *Hall v. Florida*). *See* 4 F.4th at 588; *Bourgeois*, 977 F.3d at 628; *Bourgeois v. Warden*, 2:19-CV-392, Doc. 1 at 47-48, 68-71 (S.D. Ind. Aug. 15, 2019). And in each case, the defendant attached a medical expert's opinion that the defendant was intellectually disabled. 4 F.4th at 588; *Bourgeois v. Warden*, 2:19-CV-392, Doc. 1-1 at 6-11 (S.D. Ind. Aug. 15, 2019).

In view of these "similar facts," it is unsurprising that the panel "chart[ed] the same course" as in *Bourgeois*. 4 F.4th at 591. Fulks nevertheless claims that *Bourgeois* "does not apply" to his case because Bourgeois raised an intellectual disability claim in his § 2255 motion and "was granted a full evidentiary hearing on that claim," whereas Fulks was "'formally prevented' from raising his *Atkins* claim in his initial § 2255 proceedings . . . because he

13

had no diagnosis to proffer in support of that claim." Pet. 19-20 (capitalization omitted). But Fulks misunderstands the inquiry. "It is not enough that proper use of the statute results in denial of relief." *Purkey*, 964 F.3d at 615. Instead, Fulks must show that a "structural defect[ ]" *in § 2255 itself* "formally prevented" him from raising an *Atkins* claim. *Bourgeois*, 977 F.3d at 636, 638 (quotation omitted). That he cannot do.

Moreover, the hurdle that Fulks claims prevented him from *bringing* an intellectual-disability claim—unavailability of circa-2019 legal and diagnostic standards—is the very thing that Bourgeois claimed prevented him from *prevailing on* his intellectual-disability claim. The inability to obtain § 2255 relief in each case resulted not from a "structural defect[ ]" in § 2255, *Bourgeois*, 977 F.3d at 638, but from a failure of proof. The fact that Fulks's claim failed at the threshold makes no difference.

Additionally, Fulks's inability to obtain an intellectual-disability diagnosis—which indicates that his claim was weaker than Bourgeois's— should not put him in a *better* position than Bourgeois. Fulks has offered no reason why a defendant who fails to raise an intellectual-disability claim in his § 2255 motion should be allowed recourse to § 2241, while a defendant who diligently (albeit unsuccessfully) raises such a claim is not.

14

Nor has Fulks explained how the en banc court could rule in his favor without overruling *Bourgeois*. Fulks's arguments in his rehearing petition echo those made by Bourgeois when seeking rehearing. *See* Petition for Panel Rehearing or Rehearing En Banc, Doc. 43 at 1, 8-17, No. 20-1891 (7th Cir. Oct. 13, 2020) (arguing that *Bourgeois* conflicts with *Moore I*, *Moore II*, *Atkins*, and *Webster*). Yet this Court denied rehearing, 980 F.3d 1190 (7th Cir.), and the Supreme Court denied certiorari, 141 S. Ct. 507 (2020). The same outcome is warranted here.

## CONCLUSION

This Court should deny Fulks's petition for rehearing.

Respectfully submitted,

JOHN C. CHILDRESS
Acting United States Attorney
Southern District of Indiana

KENNETH A. POLITE, JR.
Assistant Attorney General

DANIEL S. KAHN
Acting Deputy Assistant Attorney
General

ROBERT FRANK DALEY, JR.
KATHLEEN MICHELLE STOUGHTON
Assistant United States Attorneys
District of South Carolina

WILLIAM A. GLASER
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave, NW, Ste. 1264
Washington, DC 20530
(202) 532-4495
William.Glaser@usdoj.gov

15

## CERTIFICATE OF COMPLIANCE

1.     This response complies with the page limitation in this Court's September 15, 2021 order because it does not exceed 15 pages.

2.     This response complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Calisto MT 14-point type.

s/ William A. Glaser<br>
WILLIAM A. GLASER

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2021, I electronically filed the foregoing document with the United States Court of Appeals for the Seventh Circuit using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ William A. Glaser<br>
WILLIAM A. GLASER