No. 20-1900

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

_____

CHADRICK FULKS,
*PETITIONER/APPELLANT,*

v.

SUPERINTENDENT,
USP-TERRE HAUTE,
UNITED STATES OF AMERICA,
*RESPONDENTS/APPELLEES.*

_____

On Appeal from the United States District Court
for the Southern District of Indiana
No. 2:15–cv–00033, Hon. James R. Sweeney II

**REPLY IN SUPPORT OF**

**PETITION FOR REHEARING EN BANC OR PANEL REHEARING**

**THIS IS A DEATH PENALTY CASE**

> Peter Williams
> *Counsel of Record*
> Claudia Van Wyk
> Assistant Federal Defenders
> Federal Community Defender Office
> for the Eastern District of Pennsylvania
> 601 Walnut Street, Suite 545 West
> Philadelphia, PA 19106
> 215-928-0520
> *Counsel for Petitioner-Appellant*

October 4, 2021

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

GLOSSARY ................................................................................................................ iii

ARGUMENT ...............................................................................................................1

THE PANEL'S ANALYSIS IS CONTRARY TO THE DUE DILIGENCE STANDARD SET FORTH IN *WEBSTER I* AND *II* AND VIOLATES THIS COURT'S SAVINGS CLAUSE JURISPRUDENCE, *ATKINS,* AND *MOORE I.* ................................................................................................................1

CONCLUSION .............................................................................................................9

i

# TABLE OF AUTHORITIES

**Federal Cases**

*Bourgeois v. Watson*, 977 F.3d 620 (7th Cir. 2020) ................................................ 6

*United States v. Roane*, 378 F.3d 382 (4th Cir. 2004) ............................................ 5

*Webster v. Daniels*, 784 F.3d 1123 (7th Cir. 2015) ........................................ 1, 2, 3

**Federal Statutes**

28 U.S.C. § 2555 .......................................................................................... 1

**State Statutes**

§ 2241 ............................................................................................... *passim*

§ 2255 ............................................................................................... *passim*

**Other**

Fed. R. App. P. 32 ......................................................................................... 1

**GLOSSARY**

| | |
|---|---|
| AAIDD | American Association on Intellectual and Developmental Disabilities |
| AAIDD–2012 | American Association on Intellectual and Developmental Disabilities, *User's Guide to Intellectual Disability—Definition, Classification, and Systems of Supports—11th Edition* (2012) |
| AAIDD–2015 | American Association on Intellectual and Developmental Disabilities, *The Death Penalty and Intellectual Disability* (2015) |
| AEDPA | Anti-Terrorism and Effective Death Penalty Act |
| DSM-5 | American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition* (2013) |
| GR | Government's Response to Petition for Rehearing, Filed September 24, 2021 |
| ID | Intellectual Disability |
| PA | Petitioner/Appellant's Appendix[1] |
| PFR | Petition for Rehearing En Banc or Panel Rehearing, Filed September 2, 2021 |
| RB | Government's Response Brief, filed Dec. 21, 2020 |
| Supp. App. | Government's Supplemental Appendix, filed Dec. 21, 2020 |

---

[1] Cites to Petitioner/Appellant's Appendix include cites to Volumes I–III of the Appendix filed with the Opening Brief on October 21, 2020 (collectively encompassing pages PA0001-PA0527) and the Supplemental Appendix containing additional documents filed with the Reply Brief (encompassing pages PA0528-PA0582).

**ARGUMENT**

**THE PANEL'S ANALYSIS IS CONTRARY TO THE DUE DILIGENCE STANDARD SET FORTH IN *WEBSTER I* AND *II* AND VIOLATES THIS COURT'S SAVINGS CLAUSE JURISPRUDENCE, *ATKINS*, AND *MOORE I*.**

The Government's arguments in opposition to rehearing rely on a number of legal and factual misconceptions and misstatements to which Mr. Fulks wishes to reply. For the reasons below, the Court should reject them and order rehearing or rehearing en banc.

1.    **The rule in *Webster*.** Mr. Fulks relies in part on *Webster v. Daniels*, 784 F.3d 1123 (7th Cir. 2015), to support his argument that a structural defect in 28 U.S.C. § 2555 prevents him from securing relief under that provision, entitling him to invoke the "savings clause" of § 2555(e) and proceed under § 2241. He argues that he, like Webster, finds himself in the "Kafkaesque" position of being ineligible for execution, but unable to vindicate this right through § 2255, because he, also like Webster, cannot show newly discovered evidence establishing innocence (as opposed to categorical ineligibility for the death sentence). PFR at 9-10. He argues that this brings to light a "fundamental problem" with § 2255: "it fails to account for capital defendants who are categorically exempt from execution due to developments that occurred after their initial § 2255 proceedings that do not satisfy § 2255(h)." PFR at 10. He cites *Webster* as authority for this argument. *Id*. at 10-11.

1

In response, the Government asserts that *Webster* does not establish the "broad rule" that Mr. Fulks draws from it. GRP at 7-8. The Government construes his argument as a pitch for avoiding the strict constraints of § 2255(h) whenever a petitioner can produce new evidence. *Id.* But Mr. Fulks makes no such argument. He argues that, because an *Atkins* claim was *unavailable* to diligent counsel in his initial § 2255 proceedings and cannot be raised in a successive § 2255 motion now, § 2241 review is appropriate now that new diagnostic developments have rendered the claim available. PFR at 11-19. To hold otherwise would impose a procedural barrier that would bar an intellectually disabled defendant in Mr. Fulks's position from ever litigating an *Atkins* claim. *Id.* This procedural structure would create the precise problem that the *Webster* Court sought to avoid: "the intolerable result of condoning an execution that violates the Eighth Amendment." 784 F.3d at 1139.

**2.     The panel's standard for invoking § 2255(h).** According to the Government, the key feature present in *Webster* and lacking in Mr. Fulks's case is that the newly discovered evidence predated the trial. The Government argues that the panel followed *Webster*, instead of contradicting it, by making a "fact-specific determination that the 'updates to the legal and diagnostic standards . . . do not expose any structural defect in § [2255.]'" GRP at 6-7 (quoting *Fulks v. Watson*, 4 F.4th 586, 592 (7th Cir. 2021)). The Government ignores that the *Webster* court based its determination of the facts before it on whether its analysis "would (or

could) lead to an unconstitutional punishment." *Webster*, 784 F.3d at 1139. In

*Webster*, failing to consider pre-existing evidence of intellectual disability that

could not be found by diligent counsel implicated that concern. 784 F.3d at 1140.

In Mr. Fulks's case, his *Atkins* claim could not have been raised before by diligent

counsel, precluding § 2241 review—just as in *Webster*—and "would (or could)

lead to an unconstitutional punishment." *Webster*, 784 F.3d at 1139.

> 3.     **The Government's factual errors**. First, the Government maintains

that diagnostic standards do not mandate Flynn-correction. GR at 10-11. But as the

AAIDD stated in 2015:

> A consensus among the professional and scientific community of
> intelligence and ID scholars has emerged. This consensus is that given
> the high-stakes nature of *Atkins* ID cases and their tendency to
> artificially focus on specific 'bright line' cutoff scores, *a Flynn effect*
> *correction to a person's scores in this setting is now considered best or*
> *standard practice*."

PA0535 (AAIDD-2015) (emphasis in original).

> Second, the Government argues that the diagnostic standards rejected hard

IQ cutoffs even before the DSM-5 and AAIDD-2012 were issued. GR at 11. On

the contrary, the previous version of the DSM, DSM-IV-TR, did not "reject[] the

use of hard IQ cutoffs," GR at 11, but rather *imposed* a hard cutoff of 75 that

precluded Mr. Fulks from obtaining a diagnosis of intellectual disability at the time

of his initial § 2255 proceedings. Supp. App. at 19-20. In contrast, by mandating

the *clinical* assessment of intellectual functioning, AAIDD-2012 and the DSM-5

rejected such "fixed point cutoff[s]" and emphasized that the diagnosis of intellectual disability "is intended to reflect a clinical judgment rather than an actuarial determination." PA0524 (AAIDD-2012); PA0497 (DSM-5) ("The diagnosis of intellectual disability is based on both clinical assessment and standardized testing.").

Third, the Government contests the fact that Mr. Fulks's IQ scores were the only element that precluded him from being diagnosed as ID previously, arguing that he presents no record evidence to support that proposition. GR at 11. Mr. Fulks has pled in detail the basis for his diagnosis of intellectual disability, including the adaptive deficits and the age-of-onset criteria, which relies on the same underlying data that the prior experts reviewed. IB at 5-15; PA0230-272. And, while prior experts did not specifically describe Mr. Fulks's non-IQ related deficits in the context of the three prongs of intellectual disability, the deficits they described clearly established prongs two and three. For example, psychologist James Hilkey, Ph.D., concluded that Mr. Fulks was cognitively impaired; had poor judgment; was impulsive; was socially immature and easily manipulated; had a history of academic failure during childhood despite receiving significant academic supports; showed significant impairments in academic functioning as an adult; and had "never developed adequate coping mechanisms" which "severely limited his ability to meet the demands of daily life." PA0570-73. Dr. Hilkey further tied these

4

impairments to a combination of prenatal alcohol exposure, an abusive and dysfunctional childhood, and head injuries. PA0573. By themselves, Dr. Hilkey's findings establish both the adaptive deficits and age-of-onset criteria and mirror Mr. Fulks's description of these elements of his diagnosis. *See* IB at 8-15. The only new element in his current presentation, compared to the original one, is the application of current diagnostic standards to the IQ scores.

4.     **The Government's position on *Roane***. Mr. Fulks argues that the Fourth Circuit's decision in *United States v. Roane*, 378 F.3d 382 (4th Cir. 2004), shows that it would have been futile for him to bring an *Atkins* claim at the time of his first § 2255 proceedings because no expert would diagnose him as intellectually disabled under the then-current diagnostic standards. PFR at 8, 20. The Government argues that *Roane* does not support Mr. Fulks's position because *Roane* "simply rejected a particular defendant's reliance on the Flynn Effect" rather than suggesting that "a defendant could never rely on the Flynn Effect to make out an *Atkins* claim." GR at 12. The Government's discussion of *Roane* misses the point. Mr. Fulks does not cite *Roane* for the proposition that the Fourth Circuit precluded correction for the Flynn Effect, but for the reality that Fourth Circuit precedent precluded any *Atkins* claim that was unsupported by an expert opinion. PFR at 21-23. Because Mr. Fulks's § 2255 counsel had no expert opinion finding Mr. Fulks to be intellectually disabled and could not have obtained one at

5

that time, had they filed an *Atkins* claim in 2008 during his initial § 2255 proceedings, it would have been summarily denied. *Id.* And, once the DSM-5 and AAIDD-2012 were issued, Mr. Fulks would again be barred from receiving § 2241 review because *Bourgeois v. Watson*, 977 F.3d 620 (7th Cir. 2020) precludes savings clause consideration of an *Atkins* claim that has been denied in a defendant's initial § 2255 proceedings. *Id.* at 638-39. This creates a Catch-22 procedural scheme that would—again—prevent an intellectually disabled defendant in Mr. Fulks's position from ever receiving merits review of an *Atkins* claim. PFR at 21-23.

5.    **The Government's position on *Bourgeois*.** Mr. Fulks argues that his case and *Bourgeois* are fundamentally different. Mr. Bourgeois had a full opportunity to develop an *Atkins* claim, supported by expert testimony, in his initial § 2255 petition and, *for that reason alone*, this Court held he had not been "formally prevented" from raising the claim he later asserted in a § 2241 petition. Mr. Fulks, in contrast, has never had that opportunity because, at the time of his initial § 2255 proceedings, he could not have obtained an expert opinion to support his *Atkins* claim. *See* PFR at 19-20. The Government, on the other hand, argues that *Bourgeois* "effectively foreclosed Fulks's claims" because, in each case, *Atkins* was on the books at the time of the original motion, and the defendant then sought relief in 2019 relying on changes in clinical and legal standards and

6

attaching a medical expert's opinion. The Government urges the Court to reject

Mr. Fulks's argument that he was "formally prevented" from raising his *Atkins*

claim because he does not point to a defect in § 2255 statute itself that foreclosed

the claim. GR 58 at 13-14.

Mr. Fulks's petition for rehearing explains why this argument is wrong. PFR

at 11-22. Even if it is right, however, the Court should grant rehearing en banc to

resolve the conflict between the Government's reading of *Bourgeois* and this

Court's holding in *Webster*. According to the Government, *Bourgeois* holds it is

not enough that it was practically impossible to bring an *Atkins* claim in the first

petition. *Webster*, though, holds that if the evidence on which the claim relies was

unavailable to diligent counsel at the time of the first petition, that practical

impossibility is enough to open a path to § 2241 review through the savings clause.

*Webster* and the Government's reading of *Bourgeois* cannot logically coexist.

Thus, even if the Court accepts the Government's reading, it should grant

rehearing en banc to resolve the conflict.

## CONCLUSION

For the reasons above and in Mr. Fulks's petition for rehearing, this Court

should grant either rehearing en banc or panel rehearing.

Respectfully submitted,

/s/ *Peter Williams*
Peter Williams
   *Counsel of Record*
Claudia Van Wyk
Assistant Federal Defenders
Federal Community Defender Office
for the Eastern District of Pennsylvania
Suite 545 West – The Curtis Center
Philadelphia, PA 19106
215–928–0520

Dated: October 4, 2021

1

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

This brief contains 1681 words excluding the parts of the brief exempted by Fed. R. App. P. 32(f). The Federal Rules of Appellate Procedure and the Seventh Circuit's Rules do not address the filing of a reply in support of a petition for rehearing or the word limitations that would accompany that reply. Petitioner-Appellee has filed a motion simultaneously with this brief requesting permission to file it.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), the type style requirements of Fed. R. App. P. 32(a)(6), and Seventh Circuit Rule 32(b), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman.

*/s/ Peter Williams*
Peter Williams

## CERTIFICATE OF SERVICE

I, Peter Williams, hereby certify that on October 4, 2021, I electronically filed the foregoing petition with the Clerk of Court for the Seventh Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ *Peter Williams*
Peter Williams